# United States Court of Appeals
## For the First Circuit

No. 10-1812

UNITED STATES OF AMERICA,

Appellee,

v.

NATHAN REHLANDER,

Defendant, Appellant.

No. 10-1831

UNITED STATES OF AMERICA,

Appellee,

v.

BENJAMIN J. SMALL,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,

Torruella and Boudin, Circuit Judges.

Virginia G. Villa, Assistant Federal Defender, Federal Defender Office, for appellants.

Renée M. Bunker, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief for appellee.

January 13, 2012

**BOUDIN**, **Circuit Judge**.  Benjamin Small and Nathan Rehlander were each involuntarily admitted to psychiatric hospitals under Maine's "emergency procedure," Me. Rev. Stat. tit. 34-B, § 3863 (2011), and each was later convicted for possessing firearms after having been "committed to a mental institution."  18 U.S.C. § 922(g)(4) (2006).  This court has previously held that a section 3863 hospitalization qualifies as a "commitment" under section 922(g)(4),[1] but appellants say that District of Columbia v. Heller, 554 U.S. 570 (2008), has altered the equation.

The background events are undisputed and quickly recounted.  Maine has two procedures for involuntary psychiatric hospitalization.  Section 3863 provides for temporary hospitalization following ex parte procedures--that is to say, without an adversary proceeding.  The procedures include an application by a health or law enforcement officer, a certifying medical examination by a medical practitioner, and an endorsement by a judge or justice of the peace confirming that these procedures have been followed.  Me. Rev. Stat. tit. 34-B, § 3863(1)-(3).

For full-scale commitments (as opposed to temporary hospitalization), Maine requires a traditional adversary

---

[1]United States v. Chamberlain, 159 F.3d 656, 665 (1st Cir. 1998); United States v. Holt, 464 F.3d 101, 105-06 (1st Cir. 2006), cert. denied, 549 U.S. 1344 (2007).  Not all circuits shared this view.  Compare United States v. Giardina, 861 F.2d 1334, 1337 (5th Cir. 1988), United States v. Hansel, 474 F.2d 1120, 1122-23 (8th Cir. 1973), with United States v. Waters, 23 F.3d 29, 31-36 (2d Cir.), cert. denied, 513 U.S. 867 (1994).

proceeding, Me. Rev. Stat. tit. 34-B, § 3864, culminating in a judicial determination as to whether the subject both is mentally ill and poses a danger to himself or others, id. § 3864(6). This procedure is described in the statute as a "commitment," not "emergency hospitalization," and one consequence is that under Maine law, a section 3864 commitment causes a loss of the right to possess firearms. Me. Rev. Stat. tit. 15, § 393(1)(E).

In May 1998, Small was twice hospitalized under section 3863--at the request of his mother and an emergency mental health worker, respectively--based on suicidal tendencies and other signs of mental illness. In March 2009, the police found Small in possession of an Astra .357 revolver. In April 2009, Small was again hospitalized under section 3863 and then committed on a longer-term basis under section 3864. Small was indicted in November 2009 for violation of section 922(g)(4), based solely on his May 1998 section 3863 hospitalizations and March 2009 possession.

In March 2007, Rehlander was involuntarily hospitalized under section 3863 at the request of a crisis clinician, also based primarily on suicidal impulses. After then submitting to voluntary hospitalization for a few days, Rehlander changed his mind, and in early April 2007 he was again involuntarily hospitalized under section 3863 at the request of hospital personnel. Section 3863

-4-

hospitalizations are subject to strict time limits, so the hospital applied for longer-term involuntary commitment under section 3864.

A full-scale section 3864 proceeding followed at the end of which the Maine state court ordered Rehlander discharged, concluding that at this point Rehlander needed treatment but did not pose a risk of serious harm. In December 2008, police responding to an assault complaint found Rehlander with a 9 mm. caliber pistol. Rehlander was indicted in September 2009 for violation of section 922(g)(4), based on his March and April 2007 section 3863 hospitalizations and December 2008 possession.

Both Small and Rehlander moved to dismiss their indictments on constitutional grounds, arguing that application of section 922(g)(4) to them violated their Second Amendment right to bear arms under the Heller decision and their Fifth Amendment due process rights. After the district court denied their motions, each pled guilty to violating section 922(g)(4) but reserved--and have now exercised--their right to appeal from the denial of their motions to dismiss.

The issues before us are legal and our review is therefore de novo. United States v. Volungus, 595 F.3d 1, 4 (1st Cir. 2010). The appellants press their constitutional claims in various permutations; the most potent is that, given Heller's pronouncement of an individual constitutional right to possess arms, the ex parte procedures employed under section 3863 may

justify temporary hospitalization but not a permanent deprivation of the right to bear arms--permanent given the lack of any meaningful way ever to recapture that right.

We conclude that this claim is sufficiently powerful that the doctrine of constitutional avoidance requires us to revisit our prior interpretation of section 922(g)(4); and, in doing so, we conclude that section 3863 proceedings do not qualify as a "commitment" for federal purposes. Ordinarily, panel decisions like Chamberlain are binding on subsequent panels but not where intervening Supreme Court precedent requires reconsideration. United States v. Rodríguez, 527 F.3d 221, 224-25 (1st Cir. 2008).

Chamberlain, at the time it was rendered, was a reasonable albeit not compulsory reading of section 922(g)(4). Although section 3863 did not use the word "commitment" and its procedures were effectively ex parte, it was clear from section 922's legislative history cited in the decision that Congress intended an expansive interpretation. Other circuits reached differing conclusions regarding emergency hospitalization procedures similar to section 3863, see note 1, above, but none indicated that there was a constitutional dimension to the problem.

Heller now adds a constitutional component. Although the right established in Heller is a qualified right, see note 3, below, the right to possess arms (among those not properly disqualified) is no longer something that can be withdrawn by

government on a permanent and irrevocable basis without due process. Ordinarily, to work a permanent or prolonged loss of a constitutional liberty or property interest, an adjudicatory hearing, including a right to offer and test evidence if facts are in dispute, is required.[2] It is evidently doubtful that a section 3863 commitment provides the necessary process for a permanent deprivation.

Section 3863 permits three-day involuntary hospitalizations (earlier it was five days) without any adversary proceeding and with no finding by an independent judicial or even administrative officer that the subject is either mentally disturbed or dangerous. True, there must be an application to a judge and a certification by a "medical practitioner"; but the judge merely determines that the procedural steps have been taken and makes no substantive findings. And the subject is never heard by the judge, through counsel or otherwise.

This is all that is practical for an emergency hospitalization, and for this purpose, we agree with the Maine courts that it is the only process that is due. Doe v. Graham, 977 A.2d 391, 399-400 (Me. 2009). An observer has provided facts, a medical professional has assessed mental illness and a threat to

---

[2]E.g., Willner v. Comm. on Character & Fitness, 373 U.S. 96, 102-03 (1963); United States v. Fla. E. Coast Ry. Co., 410 U.S. 224, 244-45 (1973); Friendly, Some Kind of Hearing, 123 U. Pa. L. Rev. 1267 (1975); Nowak & Rotunda, Constitutional Law §§ 13.7 & 13.8, at 547-557 (5th ed. 1995).

-7-

the immediate safety of the subject or others, and hospitalization is limited to a few days unless voluntarily extended by the subject or extended by a court under protective procedures.

By contrast, involuntary commitment under section 3864 is allowed only after a court holds an adversary hearing--providing counsel for the patient and an opportunity to testify and to call and cross-examine witnesses. Me. Rev. Stat. tit. 34-B, § 3864(5). The committing court must then itself determine whether there is clear and convincing evidence that the patient is mentally ill and poses a likelihood of serious harm, and whether better alternative arrangements exist. Id. § 3864(6); cf. Addington v. Texas, 441 U.S. 418 (1979).

The Supreme Court made clear in Heller that its decision did not undercut traditional restrictions on the possession of arms by those who were mentally ill.[3] But nothing suggests that the Court was there addressing a permanent ex parte deprivation of its newly recognized constitutional right. And, given ordinary due process requirements that the Court has adopted in the past, it is highly doubtful that it would deem section 922(g)(4) adequate if it were read to embrace the Maine emergency hospitalization--at least absent further protective procedures or remedies.

_____

[3]Among other reservations, the Court stated that "nothing in [Heller] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." Heller, 554 U.S. at 626-27; accord McDonald v. City of Chicago, 130 S. Ct. 3020, 3047 (2010).

This would be a different case if section 922 addressed ex parte hospitalizations and provided for a <u>temporary</u> suspension of the right to bear arms pending further proceedings. It could also be different if section 922 permitted one temporarily hospitalized on an emergency basis to recover, on reasonable terms, a suspended right to possess arms on a showing that he now no longer posed a risk of danger. <u>Cf.</u> note 4, below. In all events, right now there is no recovery procedure in Maine that would avoid the ban of section 922.

The Attorney General can grant relief from firearms disability, 18 U.S.C. § 925(c), but Congress has prohibited action on such petitions since 1992. <u>See</u> <u>Logan</u> v. <u>United States</u>, 552 U.S. 23, 28 n.1 (2007); <u>United States</u> v. <u>Booker</u>, 570 F. Supp. 2d 161, 164 n.2 (D. Me. 2008). Congress has also allowed states to develop a "relief from disabilities program," NICS Improvement Amendments Act of 2007, Pub. L. No. 110-180, 122 Stat. 2559 (2008) (codified at 18 U.S.C. § 922 note), but Maine's program has not been approved by the Attorney General.[4]

Accordingly, as federal and Maine law stood and still stand, Small and Rehlander were permanently deprived of a right to

---

[4]Even if the state scheme were approved, in this case Rehlander is ineligible for relief due to a five-year waiting period running from the date of discharge from a section 3863 hospitalization. Small's later commitment under section 3864 disqualifies him from relief entirely, <u>see</u> Me. Rev. Stat. tit. 15, § 393(4-A), which is not necessarily a problem but was also (as noted above) not the basis for his conviction in this case.

bear arms based solely on procedures suitable for temporary hospitalization under emergency conditions. Understandably, nothing in those procedures provided an advance adversary proceeding to test whether the subject was mentally ill or dangerous, but there is also no effective post-hospitalization means to recover the right to bear arms if the subject had in fact never been mentally ill or dangerous.

The constitutional doubts raised by such a regime are sufficient that we now conclude that section 922 should not be read to encompass a temporary hospitalization attended only by the ex parte procedures of section 3863. The ordinary rule is that statutes are to be read to avoid serious constitutional doubts, if that course is possible, Jones v. United States, 529 U.S. 848, 857 (2000), and it is readily possible here. Indeed, some circuit courts had read procedures like section 3863 not to create disability even without constitutional doubts awakened by Heller. See note 1, above. And it is textually permissible to read section 922 not to be triggered by a section 3863 hospitalization.

It is at least suggestive that section 922 used the word "commitment," and--while state nomenclature is not controlling--section 3863 refers only to admissions on an emergency basis, Me. Rev. Stat. tit. 34-B, § 3863, by contrast to "commitment" under section 3864. Further, Maine law prohibits firearm possession by those committed under section 3864 but not

those admitted under section 3863.  Me. Rev. Stat. tit. 15, § 393(1)(E).  Thus, Maine treats its temporary hospitalization procedures as insufficient to nullify the right to possess guns.

Given the discrepant wording and the sparse procedures of section 3863, only Congress' broad purpose in section 922--to keep guns out of the hands of those who were mentally ill--trumped these considerations in Chamberlain.  159 F.3d at 660, 662-64.  True, that purpose would be still be served after Heller by reading section 922 to cover Maine's ex parte hospitalization; yet due process is now a countervailing concern, supported by considerable Supreme Court precedent.  And, in enacting section 922, nothing suggests that Congress had in mind temporary hospitalizations supported only by ex parte procedures.

Along with legislative purpose, the government points to our speculation in Chamberlain that some "subsequent proceedings before state tribunals may vitiate" an emergency hospitalization.  Chamberlain, 159 F.3d at 665.  But a close further look, focused by Heller, persuades us that there is no ready way, at least in the ordinary case, to use section 3864 procedures or any other obvious device, to nullify the asserted arms-barring effect of a mistaken section 3863 admission.  Nor does section 922 invite a review of a factual mistake made in such an admission.

The government argues that Small and Rehlander's voluntary extension of their section 3863 hospitalizations--as well

-11-

as Rehlander's failure to contest his emergency hospitalization in section 3864 proceedings--confirms their mental illness and waives any due process challenge. Such voluntary hospitalizations do not qualify as "commitments." 27 C.F.R. § 478.11 (2011). And, as Rehlander's experience demonstrates, a section 3864 proceeding focuses on current condition and not a prior temporary admission.[5]

Finally, the government points to evidence that Small and Rehlander were mentally ill and dangerous both at the time of their emergency admissions and when they possessed firearms. But in section 922, Congress did not prohibit gun possession by those who were or are mentally ill and dangerous, and such a free floating prohibition would be very hard to administer, although perhaps not impossible. This is why, as with the ban on prior felons, Congress sought to piggyback on determinations made in prior judicial proceedings to establish status.

Thus, section 922(g)(4) does not bar firearms possession for those who are or were mentally ill and dangerous, but (pertinently) only for any person "who has been adjudicated as a mental defective" or "has been committed to a mental institution." As we read section 922 in light of the concerns already discussed,

---

[5]As earlier noted, Rehlander prevailed in his section 3864 case; and, as also earlier noted, Small was committed under that section and violated state and federal law if he thereafter possessed a gun, but the government in this case relied only on Small's firearms possession following his 3863 hospitalizations but prior to his section 3864 commitment.

a temporary hospitalization under section 3863 does not constitute a "commitment" under section 922--just as it clearly does not constitute a commitment under Maine law itself.

If Rehlander is now mentally ill and dangerous, his commitment may be sought under section 3864 which, if successful, will create a presumptively valid section 922 ban; Small is already subject to such a ban as to future gun possession. See note 5 above. As for the broader problem of those hospitalized under section 3863 alone, Congress might well be able to impose a temporary ban on firearms possession or perhaps even a permanent one if procedures existed for later restoring gun rights. Since much might depend on the terms, it is unwise to say more about such matters absent a concrete case and adequate briefing.

It follows that the convictions of Small and Rehlander must be set aside. The district court cannot be faulted for following Chamberlain, but the panel is constrained to abandon that decision by Heller, which implicates the Supreme Court's earlier due process precedents. Complications may result, in relation to prior convictions of others based on Chamberlain, but this often occurs with new Supreme Court doctrine and the problems will be resolved if and as they are presented.

The judgments of conviction of Small and Rehlander are reversed.